UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

VALERIE YVETTE MARTINEZ,                              Case No. 20-12360-t13

        Debtor.

## **OPINION**

Before the Court is the third fee application of Debtors' counsel, New Mexico Financial and Family Law, P.C., seeking allowance of $2,950 in professional fees, $61 in costs, and New Mexico gross receipts tax. Debtor and the chapter 13 trustee objected. The trustee's objection will be resolved by entry of this opinion and order. Debtor elected not to pursue her objection but asked the Court to ensure that all allowed fees are reasonable.

The Court previously awarded Counsel $12,105 in fees, costs, and tax, for work done through March 8, 2023. If all requested fees are allowed, total allowed fees for the case would equal $13,803. Because that amount is about twice the average for a chapter 13 case in this district at the end of a case, the Court has reviewed all three fee applications and compared the fees charged to the results achieved. The Court finds that no more than $11,600 in fees should be allowed for all work done in this case. The Court therefore will allow $747 in fees, plus applicable gross receipts tax, for the third fee application.

A.     Facts.

The Court finds:[1,2]

---

[1] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (approving such judicial notice); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

[2] Some of the Court's findings are in the discussion section of the opinion.

In August of 2020, debtors retained New Mexico Financial and Family Law, P.C. ("Counsel") to file this case. Debtors gave Counsel a $2,000 retainer. Attorneys Don Harris and Dennis Banning, paralegal Jill Stevenson, and "MEB" worked on the case. Counsel filed the case on December 31, 2020. The initial filings included the petition, disposable income calculation, schedules, statement of financial affairs, chapter 13 plan, credit counseling certificate, and disclosure of compensation.

The case has been straightforward. The plan drew only one objection, from the trustee. The objection was resolved by entry of an agreed confirmation order, submitted to the Court before a final hearing on plan confirmation. No other significant preconfirmation activity occurred. Counsel filed its first fee application on May 21, 2021. In the six and a half months covered by the application (two of which were prepetition), Counsel billed Debtor $8,685[3] in fees. Counsel voluntarily reduced its request for allowance to $6,500 in fees. The Court allowed the fees on an interim basis in the reduced amount.

During the second application period, Debtor had to file a motion to modify her plan because the plan had not dealt with a small secured claim.[4] Debtor also filed a motion to incur debt, which was granted by default. Counsel filed a second fee application on March 14, 2023, seeking allowance of $4,353 of attorney fees, plus gross receipts tax and costs. The Court entered an interim order allowing the fees.

Finally, during the third application period Debtor amended schedules I and J; filed and later withdrew a motion to modify the plan; filed a motion to incur debt; and forwarded Debtor's

---

[3] All monetary figures are rounded to the nearest dollar.
[4] Counsel charged $600 to correct its failure to provide for this claim.

tax returns to the chapter 13 trustee. Counsel's third fee application seeks allowance of $2,950 of attorney fees.

Together, the three fee applications seek allowance of $13,803 in fees. The Court will analyze the requested fees by categorizing them as originally invoiced and then crediting Counsel's voluntary $2,185 reduction:

| Category | Attorney time | Paralegal time | Combined fees |
|---|---|---|---|
| Clerical work | 1.5 | | $ 375 |
| Emails | 18.9[5] | | $ 4,725 |
| Phone calls/Zoom meetings | 11.7 | 0.7 | $ 3,030 |
| Reviewing proofs of claim | 7.0 | | $ 1,750 |
| Remedying mistake in Wells Fargo Claim | 2.4 | | $ 600 |
| Attending hearing/341 meeting | 1.9 | | $ 475 |
| Administration | 6.3 | 8.4 | $ 2,868 |
| IRS issue | | 0.2 | $ 30 |
| Draft confirmation orders | 2.7 | | $ 675 |
| File review | 2.5 | | $ 625 |
| Objections | 0.6 | | $ 150 |
| Fee Applications | 2.2 | 0.9 | $ 685 |
| Total | 57.7 hrs. | 10.2 hrs. | $ 15,988 |
| Voluntary reduction of $2,185 | | | $ 13,803 |

B.  General Requirements for Debtor Attorney Fee Allowance in Chapter 13.

Compensation of debtor's counsel in chapter 13 is governed by § 330(a)(4)(B):[6, 7]

> In a ... chapter 13 case ... the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

---

[5] A total of 19.5 hours was billed for email. 0.6 of those hours is categorized in the line item titled "Remedying mistake in Wells Fargo Claim."

[6] This is true for work done pre- or post-confirmation. *See*, *e.g.*, *In re Conner*, 559 B.R. 526, 533 (Bankr. D.N.M. 2016) (awarding supplemental fees pursuant to § 330(a)).

[7] Unless otherwise stated, all statutory references are to 11 U.S.C.

Section 330(a)(4)(B) was added to the bankruptcy code by the Bankruptcy Reform Act of 1994.[8]

"[A] chapter 13 debtor has the right to employ counsel so long as the following two requirements are met: 1) [disclosure of] compensation paid or agreed to be paid pursuant to section 329 and 2) . . . approval of post-petition payments from property of the estate pursuant to section 330(a)(4)(B)." *In re Rosales*, 621 B.R. 903, 922 (Bankr. D. Kan. 2020), quoting *In re Gorski*, 519 B.R. 67, 71 (Bankr. S.D.N.Y. 2014).

Compensation generally can include reimbursement of expenses advanced, e.g., filing fees, credit counseling fees, and credit report fees. *See, e.g., In re Riley*, 923 F.3d 433, 443 (5th Cir. 2019); *In re Genatossio*, 538 B.R. 615, 617 (Bankr. D. Mass. 2015) (§ 330(a)(4)(B) permits an award of fees and expenses).

"The attorney seeking compensation bears the burden of proving entitlement to all fees and expenses requested." *In re Dille*, 2021 WL 864201, at *2 (Bankr. W.D. Mo.), citing *In re Kula*, 213 B.R. 729, 736 (8th Cir. BAP 1997); *In re Cooke*, 2020 WL 6821730, at *3 (Bankr. D. Ariz.), citing *In re Roderick Timber Co.,* 185 B.R. 601, 606 (9th Cir. BAP 1995). "This burden is not to be taken lightly given that every dollar expended on legal fees results i[n] a dollar less that is available for distribution to the creditors." *Dille*, 2021 WL 864201, at *2, citing *In re Ulrich,* 517 B.R. 77, 80 (Bankr. E.D. Mich. 2014); *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987) (same); *In re Hotel Assoc., Inc.*, 15 B.R. 487, 488 (Bankr. E.D. Pa. 1981) (same).

Approval and payment of interim fee applications is subject to review by the Court until the case has come to its resolution.

---

[8] The Reform Act also deleted the language "or to the debtor's attorney" from § 330(a)(1). Until then, § 330(a)(1) had included the debtor's attorney in the list of persons who could be paid from the estate. In *Lamie v. U.S. Trustee*, 540 U.S. 526, 541 (2004), the Supreme Court held that the Reform Act meant that debtor's counsel in a chapter 12 or 13 case could only be compensated under § 330(a)(4)(B).

> Interim fee awards are not final determinations intended to put a matter to rest. Rather, they are interlocutory and reviewable, and are intended only to provide some interim relief from the economic hardships of subsidizing litigation." [quoting *In re Heritage Real Est. Inv., Inc.*, 2021 WL 1396570, at *12 (Bankr. S.D. Miss.)] (quoting *Cont'l Ill. Nat'l Bank & Trust Co. v. Charles N. Wooten, Ltd. (In re Evangeline Refin. Co.)*, 890 F.2d 1312, 1322 (5th Cir. 1989)).

*In re S-Tek 1, LLC*, 2023 WL 1787893, at *2 (Bankr. D.N.M.); *see also In re Union Home & Indus., Inc.*, 376 B.R. 298, 301–02 (10th Cir. BAP 2007) (interim fee awards are interlocutory).

> The statute anticipates repeated application to the court for reimbursement and compensation, subjecting the award to amendment or modification at any time during the pendency of the bankruptcy proceedings. Interim awards of compensation, which are within the court's discretion, *In re Solar Manufacturing Corp.*, 190 F.2d 273 (3d Cir.), *cert. denied sub nom. McGirl v. Mintz*, 342 U.S. 893, 72 S. Ct. 200, 96 L. Ed. 669 (1951), are to be considered by the court in making a final award. *Massachusetts Mutual Life Insurance Co. v. Brock*, 405 F.2d 429 (5th Cir. 1968), *cert. denied*, 395 U.S. 906, 89 S. Ct. 1748, 23 L. Ed. 2d 220 (1969). "Interim allowances are always subject to the court's re-examination and adjustment during the course of the case, and all expenses of administration must receive the court's final scrutiny and approval." 2 Collier on Bankruptcy P 331.03 (15th ed. 1981). Interim awards, too, are refundable to the estate in cases of misconduct. *In re Arlan's Department Stores, Inc.*, 462 F. Supp. 1255 (S.D.N.Y. 1978), aff'd, 615 F.2d 925 (2d Cir. 1979). Interim awards, then, are in no respect final adjudications on the question of compensation. Such awards are therefore interlocutory.

*In re Callister*, 673 F.2d 305, 306-07 (10th Cir. 1982).

C. <u>Determining How Much Compensation Should be Allowed</u>.

"To be compensable, the fees must be for services that were 'actual' and 'necessary.' § 330(a)(1)(A). If the applicant clears these hurdles, then the fees must be 'reasonable.'" *In re Railyard Company, LLC*, 2017 WL 3017092, at *3 (Bankr. D.N.M.); *see also In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) (to the same effect); *In re Commercial Financial Services, Inc.*, 427 F.3d 804, 810 (10th Cir. 2005) (discussing the "reasonableness" requirement).

1. <u>Actual Services</u>. Compensation can only be allowed for services actually performed. *See, e.g., In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 601 (Bankr. D. Colo. 1989) ("The Code requires that the services actually be performed before the compensation is awarded. Therefore, work to be performed does not qualify for actual services rendered"). There is no issue in this case about whether the fees charged were for work that was actually performed.

2. <u>Necessary Services</u>. Allowance is limited to "services [that] were necessary to the administration of, or beneficial … toward the completion of a case." *In re Schupbach Investments, LLC*, 521 B.R. 449, at *8 (10th Cir. BAP 2014) (unpublished); *In re Hungry Horse, LLC*, 2017 WL 3638182, at *3 (Bankr. D.N.M.) (same). In chapter 13 cases, the benefit can be to the debtor rather than to the estate. *See, e.g., In re Guajardo*, 2020 WL 4919794, at *3 (Bankr. D.N.M.); *In re Williams*, 378 B.R. 811, 823 (Bankr. E.D. Mich. 2007) (§ 330(a)(4)(B) is an exception to the general rule that professionals' services must benefit the estate to be compensable). However, to be compensable, the representation of the debtor must be "in connection with the bankruptcy case." § 330(a)(4)(B).

Some of the work done by counsel during the first and second application periods was not necessary for the benefit of the estate or the Debtors. First, Counsel spent an inordinate amount of time consulting with Debtor. Much of that time was unnecessary and did not benefit the estate or Debtor.

Second, clerical work is not compensable as a "necessary" service rendered by a professional person seeking allowance of fees under § 330(a). *See, e.g.*, *In re Guajardo*, 2020 WL 762828, at *4 (Bankr. D.N.M.) ("While necessary in every legal proceeding, clerical work cannot reasonably be passed onto clients or the estate and should instead be absorbed by the firm as overhead."); *In re CF&I Fabricators of Utah, Inc.*, 131 B.R. 474, 489 (Bankr. D. Utah 1991)

(same). Counsel billed 1.5 hours at $250/hour trying to coordinate calls or meetings. "Time spent on these clerical tasks is not compensable. If Counsel's attorneys choose to do their own scheduling of client meetings, Zoom calls, and the like, they must not bill for it." *In re Sepulvida*, 2023 WL 6964111, at *5 (Bankr. D.N.M.); *see also In re Crunk*, 2024 WL 780573, at *3 (Bankr. D.N.M.) (same); *In re Maldonado*, 2024 WL 218255 at *4 (Bankr. D.N.M.) (same); *In re Abernathy*, 2023 WL 5525042 at *5 (Bankr. D.N.M.) (same); *In re Sepulvida*, 2021 WL 1961914, at *4 (Bankr. D.N.M.) (same); *In re DeKeyzer*, 2021 WL 1344715, at *4 (Bankr. D.N.M.) (same).

Third, work done to correct mistakes is not considered necessary. *See, e.g., In re Wheeler*, 439 B.R. 107, 110-11 (Bankr. E.D. Mich. 2010) (the time spent making the mistake is unnecessary and noncompensable or, in the alternative, the time spent correcting the mistake is unnecessary and noncompensable); *In re Redington*, 2018 WL 6444387, at *6 (Bankr. D.N.J.) (citing and following *Wheeler*); *In re Yogi*, 2014 WL 3749553, at *2 (Bankr. D. Haw.) ("when an attorney makes a mistake, the attorney should bear the cost of fixing it, not the client or the bankruptcy estate."); *In re Abernathy*, 2023 WL 5525042, at *4 (Bankr. D.N.M.) (work correcting mistakes is unnecessary). Counsel made missteps and caused work that reasonable precaution and foresight would have prevented. For example, the confirmed plan failed to address a small secured claim filed by Wells Fargo on January 14, 2021.[9] This prompted the trustee to file a motion to compel Debtor to amend her plan, which in turn prompted Debtor to file a motion to amend her plan to add Wells Fargo's secured claim.[10]

---

[9] Counsel charged $75 to review this proof of claim on January 14, 2021. Despite the review, Counsel did not address the claim in the confirmation order.

[10] Furthermore, the secured claim Wells Fargo asserted was for $447, not $685. Wells Fargo acknowledged that the difference was unsecured. The plan was modified, however, to pay Wells Fargo $685 as a secured claim, a $238 overpayment.

3. Reasonable Compensation. Finally, compensation for actual and necessary services must be reasonable. In the Tenth Circuit, bankruptcy courts ruling on the reasonableness of professional fees must weigh the factors in § 330(a)(3) and those discussed in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974). *See In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1246–47 (10th Cir. 2013) (the Tenth Circuit has long applied the *Johnson* factors). Under § 330(a)(3) the Court must consider:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The *Johnson* factors are:

> (1) The time and labor required;
> (2) The novelty and difficulty of the questions;
> (3) The skill requisite to perform the legal service properly;
> (4) The preclusion of other employment by the attorney due to acceptance of the case;
> (5) The customary fee;
> (6) Whether the fee is fixed or contingent;
> (7) Time limitations imposed by the client or the circumstances;
> (8) The amount involved and the results obtained;
> (9) The experience, reputation, and ability of the attorneys;
> (10) The "undesirability" of the case;
> (11) The nature and length of the professional relationship with the client; and
> (12) Awards in similar cases.

488 F.2d at 717-19. For the first and second fee applications, the Court weighs the § 330(a)(3) and *Johnson* factors as follows:

| Factor | Discussion |
|---|---|
| § 330(a)(3)(A): Time spent | Counsel spent much more time on this case than is typical for a chapter 13 case in this district. Thus far, counsel has billed about 68 hours. A typical case takes about 30-35 hours from start to finish. |
| § 330(a)(3)(B): Rates charged | Mr. Harris, Mr. Banning, and Ms. Stevenson are experienced professionals. They billed $250, $250, and $150 per hour, respectively. Their rates are reasonable. MEB billed 0.3 hours at $165 per hour. The fees billed for MEB's time are not substantial. |
| §330(a)(3)(C): Necessary/beneficial | In part, the work performed was necessary and beneficial. As discussed above, however, some of the work was unnecessary. |
| § 330(a)(3)(D): Timeliness | The work was timely. |
| § 330(a)(3)(E): Skill/experience | Mr. Harris and Mr. Banning are experienced chapter 13 lawyers. Ms. Stevenson is an experienced bankruptcy paralegal. MEB's skill and experience are unknown. |
| § 330(a)(3)(F): Customary compensation in non-bankruptcy cases | The rates charged are comparable to the rates of similarly experienced attorneys for non-bankruptcy work. |
| *Johnson* factor ("JF") 1: Time and labor required? | Counsel should have been able to do the work required for this case much more efficiently. See the discussion below. |
| JF 2: Novelty and difficulty of the questions? | It does not appear that any of the legal issues addressed in this bankruptcy case were particularly novel or difficult. |
| JF 3: Skill requisite to perform the legal service properly? | Counsel's professionals have the requisite skills. |
| JF 4: Preclusion of other employment due to acceptance of the case? | There is no evidence that the debtors' bankruptcy case precluded counsel from other work. |
| JF 5: Customary fee? | In this district, the customary fee to take a "typical" chapter 13 case through plan confirmation is about $5,000 in attorney and paralegal fees, costs, and tax. Some post-confirmation work is needed in many cases (e.g., plan modifications, motions to incur debt, mortgage or tax issues), typically costing $1,000-$2,000. Counsel's fees in this case are about double the average for completed chapter 13 cases in this district. |
| JF 6: Whether the fee is fixed or contingent? | The hourly rates charged by counsel were fixed. |
| JF 7: Time limitations imposed by the client or circumstances? | There were no significant time limitations in this case. |

| | |
|---|---|
| JF 8: Amount involved and results obtained? | Nothing unusual was involved in this case. Confirmation occurred in a reasonable amount of time and there was no substantial post-confirmation work. |
| JF 9: Experience, reputation, and ability of the consultant? | Counsel's professionals are experienced in chapter 13 work. |
| JF 10: Undesirability of the case? | There is no indication that this case was undesirable. |
| JF 11: Nature and length of professional relationship with the client? | Not applicable. |
| JF 12: Awards in similar cases? | As set out above, the attorney and paralegal fees charged for a "typical" chapter 13 case in this district are about $5,000 for pre-confirmation work. Post-confirmation work typically is in the $1,000-$2,000 range. |

4. <u>Time spent; billing practices</u>. The time Counsel charged to this case is not reasonable. Some of the fees billed are either for excessive time being spent on or excessive time being billed for tasks. Several billing practices contributed to the high number of hours billed. First, reviewing an email is generally billed at .2 hours, resulting in 18.9 hours billed for emails.

Second, Counsel generally billed .3 hours to review a proof of claim, resulting in 7 hours billed for such work.

Third, Counsel charged one hour to attend a preliminary hearing on March 9, 2021. Even waiting 13 minutes (the hearing started at 9:13 am on a 9:00 a.m. trailing docket), this is excessive. The hearing only took a few minutes and counsel had appeared at another hearing, in another case, just before the hearing in this case started.

5. <u>Fees Disallowed as Unnecessary or Unreasonable in Amount</u>.

Based on the above discussion, the Court finds that the following fees should be disallowed as unnecessary:

- $375 for clerical work; and
- $600 to fix the mistake about Wells Fargo's small secured claim.

Similarly, the Court finds that the § 330/*Johnson* factors weigh against the reasonableness of the total fees requested thus far in this case and that the following fees should be disallowed as unreasonable in amount:

- $175 in fees billed for attending preliminary hearing/341 meeting;
- $875 in fees billed for proof of claim review; and
- $2,363 in fees billed for sending and reviewing emails.

This totals a $4,388 reduction in fees from original invoices for all 3 fee applications. Counsel voluntarily reduced its fees in the first fee application. The reduction to $6,500 from the original invoice amount of $8,685, ($2,185), will be credited to the disallowed fees. The remaining amount of the fee reduction is $2,203. The Court approves $747 in fees for Counsel's third fee application. All costs will be approved.

## Conclusion

The Court will enter a separate order consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 11, 2024
Copies to counsel of record